Harper, Ch.
dissenting. I suppose that whatever effect the lien of an execution may have, under our decisions, within our own State, it cannot be doubted that it has no effect out of the limits of the State. Our laws cannot have operation out of our own jurisdiction. When the slave was sold in Georgia, he was subject to no lien, and there can be no doubt but that by the law of Georgia, the contract of sale was good and valid, and the purchaser acquired a good and perfect title in law and- equity. There’ is as little doubt, I think, that by the comity of nations, the validity and effect of every contract is determined by the law of the jurisdiction in which it was made, unless the contrapt has reference to another country for its performance; and it should seem to follow, that the title of the purchaser would be equally valid in every civilized State in the world. I am utterly at a loss to conceive the principle on which the slave could be subject to the execution of Ramsay when brought into this State'as the pro *352 perty of the plaintiff — how the lien of an execution against A can attach upon the property of B — how a title, good and valid, to every intent and purpose whatever, on the Southern bank of the Savannah fiver, can be defeated by the property’s being brought to the Northern bank.
If the purchaser in Georgia had known that the slave had been brought out of South Carolina for the purpose of cheating the execution, this' might well have been construed á fraud, which would have avoided his title. But this is not alledged, and the slave passed through several hands in Georgia. If a creditor of one of these owners had taken him in execu:ion, and he had been sold, the title of the purchaser would still depend upon the law of Georgia; and upon the principle contended for, if such a purchaser had brought him into this State, he must have been equally subject to the execution here. If there had been an execution against M’Bride, in Georgia, and he had been taken and sold While his property, I do not perceive how a similar consequence could be avoided.
By the principles of equity, a purchaser for valuable consideration without notice is always protected. He who has honestly paid his money, is supposed to have an equity as high as any other equity, and the court will never interfere against him. The plaintiff stands in this position. But there are not equal equities. It is a well known rule of law, that if one of two innocent persons must suffer, he shall bear the loss whose neglect has enabled a third person to occasion it. It is on this principle that a person making payment, bona fide, of a bill or note, payable to bearer, or indorsed in blank to one who stole or found it, is protected. Some degree of neglect is imputed to the true owner who lost it. But in this case the fi. fa. of Ramsay against M’Bride was lodged on the 3d of November, 1S24, and the sale of Guidron in Georgia, was on the 2Gth of May, 3827. The plaintiff forebore to enforce his execution for several years ; by this gross neglect putting it in the defendant’s power to send his property out of the State, and if the non-suit should be sustained, to defraud an innocent purchaser in Georgia. I cannot but think that such a decision would be in the highest degree unjust, and afford great cause of complaint to the citizens of neighboring States.
I am of opinion that the motion should be granted.
Chancellors DeSaussure and Johnson concurred in this opinion.